UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GLORIA J. WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:04 CV 524 |
| ) | |
| LAKE COUNTY SHERIFF'S ) | |
| DEPARTMENT; ROGELIO DOMINGUEZ, ) | |
| in his official capacity as Lake County ) | |
| Sheriff; SGT. VINCENT KIRRIN, ) | |
| individually and in his official capacity as ) | |
| a Lake County Sheriff's Officer; ) | |
| OFFICERS UNKNOWN, individually and ) | |
| in their official capacities as Lake County ) | |
| Sheriff's Officers; and THOMAS PHILPOT, ) | |
| in his official capacity as the Lake County ) | |
| Clerk, ) | |
| ) | |
| Defendants. ) | |

## OPINION and MEMORANDUM

## I. PROCEDURAL HISTORY

Plaintiff filed this lawsuit on December 16, 2004, alleging violations of the federal and Indiana state constitutions, as well as the state torts of false imprisonment, false arrest, and defamation, all of which purportedly occurred in relation to an arrest that left her imprisoned for nearly two weeks of the holiday season in late December 2002. (Compl. ¶¶ 19, 20, 21.) At the time of filing suit, plaintiff was represented by counsel. (Docket # 3-4.) Difficulties in coordinating discovery soon ensued. Plaintiff did not submit to fingerprinting, nor did she answer requests for production or return interrogatories. The court allowed plaintiff's attorney to withdraw as counsel on July 27,

2005, due to a breakdown in communication. (Order, docket # 26.) Discovery continued to prove problematic, and defendants moved (repeatedly) to compel discovery, to dismiss for want of prosecution, and for sanctions. After numerous warnings and extensions for compliance from the court, it appears that plaintiff eventually cooperated in discovery (though not completely). (Report, docket # 44; Order, docket # 50.) At the end of the day, the court issued two orders imposing monetary sanctions on plaintiff for failure to cooperate in discovery and obey court orders. (Orders, docket # 32, 55.)

Meanwhile, defendants did not obey a court order to file a status report by January 30, 2006. Defendants were ordered to appear at a show cause hearing before Magistrate Judge Cherry to explain their oversight as to the status report, at which time defense counsel indicated that they believed the summary judgment motion they filed on January 3, 2006, would be sufficient to bring the court up to speed on the status of the case. (Docket # 50.) Defendants filed this motion for summary judgment untimely, without moving for an extension of time to do so. (Defs.' Mot. Summ. J., docket # 36; Memo., docket # 37.)

Unfortunately, defendants' summary judgment motion suffered from a number of ills. The day after filing the initial untimely motion, defendants filed an incomplete set of exhibits. (Exs., docket # 38.) The next week, defendants filed an "amended document" (again, without leave of court to untimely file), which included some, but not all, of the pages previously filed as exhibits. (Am. Doc., docket # 41.) Defendants did not move to strike or withdraw any previously filed exhibits or otherwise make

2

clear what evidence corresponded to defendants' brief and the exhibit citations therein. Further, defendants' failed to provide plaintiff (at that time *pro se*) with the appropriate notice under *Timms v. Frank,* 953 F.2d 281 (7th Cir. 1992), as required by LOCAL R. 56.1(e). Instead, Magistrate Judge Cherry took the initiative to provide the notice to plaintiff on March 3, 2006. (Order, docket # 49.)

Plaintiff responded to defendants' motion for summary judgment on April 3, 2006. (Pl.'s Resp., docket # 54.) No "Statement of Genuine Issues" was included as required by LOCAL R. 56.1(a). Plaintiff's response is essentially her complaint, with a new title: "Plaintiff's Opposition to Defendant's Summary Judgment Motion." Defendants reply brief points out the repetitive nature of plaintiff's response, and then goes on to reiterate every argument in full, nearly word for word, of defendant's own motion for summary judgment, with a sentence at the end of each section arguing that plaintiff conceded to the validity of the arguments by not contesting them in her response. (Defs.' Reply, docket # 56.) Neither the parties nor the court have benefitted from these largely duplicative filings. Now before the court are the merits of defendants' summary judgment motion. For the reasons set forth below, the court finds in favor of defendants.

## II. FACTUAL BACKGROUND

The following facts are not in dispute. On December 17, 2002, plaintiff Gloria Wright was arrested by the Gary Police Department after being stopped for a traffic

3

infraction. (Compl. ¶ 8; Defs.' Memo. 2.) Plaintiff was detained pursuant to a Newton County Warrant in Lake County Jail. (Compl. ¶ 9; Defs.' Memo. 2.) During plaintiff's detention, a Lake County Bench Warrant was served upon plaintiff for the alias of Gene Nwabara pursuant to Lake County Cause Number 45D09-9703-DF-04055. (Compl. ¶ 10; Defs.' Memo. 2.) On December 30, 2002, plaintiff was released from the Lake County Jail. (Compl. ¶ 13; Defs.' Memo. 2.)

### III. LEGAL STANDARD

The FEDERAL RULES OF CIVIL PROCEDURE mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). RULE 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

4

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

**IV. DISCUSSION**

The issue in this case is whether there exist any genuine issues of material fact as to whether Gloria Wright was wrongfully arrested and detained in violation of the federal and Indiana state constitutions, and whether the defendants are liable for the torts of false imprisonment, false arrest, and defamation. Each claim is addressed in turn below, with the court finding for defendant as to all.

*A. Federal Constitutional Claims*

*1. Individual capacity claims*

Plaintiff first argues that defendants Sgt. Vincent Kirrin and Officers Unknown, all in their individual capacities, violated her constitutional rights as protected by 42 U.S.C. § 1983. In the context of a § 1983 action, "[a]n official who is sued in his or her personal capacity can only be held liable for his or her individual wrongdoing." *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 383-84 (7th Cir. 1988). Section 1983 does not

5

recognize the doctrine of superiors' liability, *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir. 1984), or respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). An official will only be liable, in her individual and personal capacity, if she has "caused or participated in" the violation of plaintiff's constitutional rights. *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983). In this case, plaintiff contends that defendants caused or participated in the violation of her Fourth and Fourteenth Amendment rights by wrongfully arresting and detaining her under a warrant for another person.

The Seventh Circuit has held that "[i]f an arrest warrant is valid on its face, the officer executing the warrant does not violate the Fourth Amendment by arresting the wrong person, unless the officer acts unreasonably." *Brown v. Patterson,* 823 F.2d 167, 169 (7th Cir. 1989). In this case, plaintiff does not dispute the facial validity of the warrant for Gene Nwabara. Thus, defendants violated plaintiff's constitutional rights only if they acted unreasonably. In *Brown*, the Seventh Circuit found it reasonable for Fourth Amendment purposes for an officer to execute a warrant against an individual, later learned to be the wrong person, where the individual's name matched an alias used by the suspect described in the warrant. *Id.* The same result has been reached even where the suspect was not even of the same race as the person named in the warrant, *Johnson v. Miller,* 680 F.2d 39, 41 (7th Cir. 1982), or had a different home address, *Patton v. Przybylski,* 822 F.2d 697, 698 (7th Cir. 1987). When met with a suspect's protests of mistaken identity, an officer may reasonably detain the suspect until the identity can be

confirmed, otherwise it might be impossible to relocate the suspect, should it turn out that he or she *is* the person named in the warrant. *See Patton,* 822 F.2d at 699-700.

Here, defendants have submitted exhibits from police department databases and records which show that plaintiff's name was associated with the alias "Gene Nwabara."[1] (Defs.' Sum. J. Ex. 41-4, at 2-3; Ex. 41-5, at 1; Ex. 41-8, at 2.) Plaintiff does not contest that police records reflected this association. The court notes that whether plaintiff, Gloria Wright, is in fact also Gene Nwabara is not entirely clear. However, even assuming plaintiff is in fact *not* Gene Nwabara, the officers who served plaintiff with Gene Nwabara's arrest warrant, believing the plaintiff and Gene Nwabara to be one in the same based on police records, acted reasonably under the circumstances. *See Brown,* 823 F.2d at 169; *Raines v. Chenoweth,* No. 1:03 CV 1289- JDT- TAB, 2005 WL 1115804, at *4 (S.D. Ind. March 30, 2005) (reasonable to detain plaintiff where police record check of plaintiff's driver's license indicated a warrant was outstanding for individual with name matching one of plaintiff's known aliases). Thus, the facts, even when read in plaintiff's favor, do not establish a deprivation of a constitutional right that Sgt. Vincent Kirrin or the Officers Unknown, in their individual capacities, could have "caused or participated in." *Wolf-Lillie,* 699 F.2d at 869. Further, plaintiff has not established a genuine issue of material fact as to whether a constitutional deprivation

---

[1] Counsel are advised not to alter or highlight exhibits, rendering the text underneath virtually illegible once electronically filed, in the future.

occurred. Accordingly, summary judgment for defendants is granted as to these claims.[2]

### 2. *Official capacity claims*

Plaintiff has also alleged that her federal constitutional rights were violated by Rogelio Dominguez, in his official capacity as Lake County Sheriff; Sgt. Vincent Kirrin, in his official capacity as a Lake County Sheriff's Officer; Officers Unknown, in their official capacities as Lake County Sheriff's Officers; and Thomas Philpot, in his official capacity as the Lake County Clerk. A § 1983 claim made against an individual in his official capacity is treated as a suit against the government entity of which he is an agent. *Richman,* 270 F.3d at 439. Thus, plaintiff's claims against these individuals in their official capacities are treated as claims against the county itself.

---

[2] In their motion for summary judgment and supporting memorandum, defendants also raise the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions, so long as the officials could have reasonably thought that they were acting constitutionally. *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987); *Leaf v. Shelnutt,* 400 F.3d 1070, 1079 (7th Cir. 2005). "In determining whether qualified immunity will apply to shield a defendant from suit, a court undertakes a two-part inquiry to assess the objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Leaf,* 400 F.2d at 1070. As explained above, under the RULE 56 summary judgment burden-shifting framework, plaintiff's claim fails *on its merits.* Thus, there is no reason for the court to consider whether plaintiff acted reasonably in committing an assumed constitutional violation, because the court finds that it is clear that no constitutional violation occurred. Nevertheless, if the court had visited the question of qualified immunity, immunity would likely have been granted, a finding that would not have changed the court's decision to grant summary judgment to defendants on the federal constitutional claims.

In *Monell,* the Supreme Court recognized that local governmental entities can indeed be held liable under § 1983. 436 U.S. at 691. However, in reaching that decision, the Court also made clear that such municipal liability is not available under a theory of *respondeat superior* alone, but rather only when a *policy or custom* of that municipality causes a constitutional injury. *Id.* at 691-92. A § 1983 plaintiff can meet *Monell's* requirements by establishing that the governmental entity's unconstitutional policy or custom took one of three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority." *Palmer v. Marion County,* 327 F.3d 588, 594-95 (7th Cir. 2003).

Plaintiff appears to rely on the first two options. (Compl. ¶ 19.) However, because, as explained above, the officers' actions *did not* amount to a constitutional deprivation, the court cannot find that a county policy, when enforced, *did* cause a constitutional deprivation. Further, because there was no constitutional violation, there exists no constitutional violation resulting from a "widespread practice." In other words, there is no constitutional injury to ground plaintiff's claim for municipal liability under § 1983. Summary judgment as to these claims is therefore proper.

   *B. State Constitutional Claim*

Plaintiff also alleges that defendants' actions violated her rights under Article I, § 11 of the constitution of the state of Indiana. (Compl. ¶ 19.) Whether a civil damage remedy exists under the Indiana constitution is not resolved by the text of the Indiana constitution or by any Indiana precedent. The issue was presented to, and accepted by, the Indiana Supreme Court in the form of a certified question in *Cantrell v. Morris,* No. 2:04CV364, 2005 WL 1159416, at **8-9 (N.D. Ind. May 17, 2005), *certified question accepted,* No. 94-S-00-0505-CQ-00243 (Ind. June 21, 2005). The Indiana Supreme Court issued its opinion in *Cantrell* yesterday. *Cantrell v. Morris,* No. 94S00-0505-CQ-243, slip op. (Ind. June 21, 2006). However, the court declined to directly address the broad question of whether the Indiana constitution provides private rights of action generally. Instead the court provided tailored guidance for the specific facts at issue in the *Cantrell* case, where a state government employee was allegedly discharged for exercising his freedom of speech on a political issue. The plaintiff sought recovery under Article I, § 9 of the Indiana constitution, a provision parallel to the United States Constitution's First Amendment. The Indiana Supreme Court indicated that it was unnecessary to determine the scope of Article I, § 9 (i.e., whether termination of a public employee for political expression constitutes a violation of the Indiana Constitution) because the source of Cantrell's remedy was the state tort of wrongful discharge. However, the court specifically noted that "the Indiana Constitution does not of itself give rise to any such claim." *Id.* at 2.

The *Cantrell* decision seems to suggest that Article I, § 11 would also not, of itself, give rise to a claim. Under such a rule, plaintiff would have no state constitutional claim for this court to consider. Nevertheless, even if the Indiana Supreme Court did recognize a private right of action for violations of Article I, § 11, the court can only presume that the standards for recovery would be similar, if not analogous, to those that have been established for federal constitutional claims. Accordingly, the court believes that the above analysis relating to plaintiff's claim under the United States Constitution would hold true with respect to plaintiff's state constitutional claim as well. In other words, summary judgment would be granted to defendants on the state constitutional claim because plaintiff has failed to establish a genuine issue of material fact as to whether defendants wrongfully and unreasonably arrested and detained her in light of the circumstances.

### C. State Tort Claims

Plaintiff's complaint also references the Indiana state torts of false arrest, false imprisonment, and defamation. (Compl. ¶ 21, 21.) Defendants point out that under the Indiana Tort Claims Act, plaintiff was required to file a notice with the governing body or risk management commission of the political subdivision being sued within one hundred eighty (180) days after her losses occurred. IND. CODE 34-13-3-8. Indeed, plaintiff's claim is "barred" unless this requirement is met. *Id.* Defendants attest that no such notice(s) have been filed. Plaintiff fails to address this shortcoming whatsoever.

Therefore, plaintiff's state tort claims are dismissed for failure to abide by the notice requirements of the Indiana Torts Claims Act.

## V. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (docket # 36) is **GRANTED**.

Defendant Lake County Sheriff's Department was dismissed from this case on March 20, 2006. (Order, docket # 51.) Accordingly, the Clerk is directed to **ENTER FINAL JUDGMENT** for the remaining defendants stating: "Judgment is entered **in favor of defendants** Rogelio Dominguez, in his official capacity as Lake County Sheriff; Sargent Vincent Kirrin, individually and in his official capacity as a Lake County Sheriff's Officer; Officers Unknown, individually and in their official capacities as Lake County Sheriff's Officers; and Thomas Philpot, in his official capacity as the Lake County Clerk; and **against plaintiff** Gloria J. Wright, who shall take nothing by way of her complaint."

**SO ORDERED.**

ENTER: June 22, 2006

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT